The opinion of the Court was delivered by
R-iohardson, J.
This was an action on a policy of insurance. The great object of the motion in this Court was to try the general question made in the Circuit Court, to wit., whether an embargo laid by the United States is one of the risks insured against, by the words, “ restraints and detainments of all kings, princes, or people, of what nation, condition, or quality, soever.” But another question sprang out of the motion, applicable to the particular case before us, to wit., whether inasmuch as the embargo law was passed on the same day on which the policy was dated, the policy was not void ab initio, as being originally illegal.
We will dispose of the latter question first. I cannot for a moment doubt the doctrine laid down by the Supreme Court of the United States, in the ease of the Mary and Susan, (1 Wheaton’s Rep. p. 58,) that no specific notice of the passing of an Act of the Legislature, is required. The ratification is legal notice to every individual in the nation. The utter impossiblity of notifying every one, is the best reason why ignorance of the law does not excuse: and that every one concerned must know the law at his peril. Any other rule would be subversive of the authority of *Iaw and order in society. Hard, then, as would be the case, and innocent as are the parties before us, the policy would be void, unless executed anterior to the Act, or the prohibitions of the Act take effect after its date. First, as to the words of the Act; they are, “ That an embargo be, and is hereby laid, for the term of ninety days from and after the passing of this Act.”[1] The interpretation of the propositions, “from and after f (if not the true grammatical one,) is sometimes exclusive of the day of the date. As an instance, the words of the stat 29 Car. 2, c. 3, are, “ that from and after the 24th June, no action shall be brought,” &c.[2] Under these words it has been holden, .that the restriction of the statue applied only to promises made after, and not on,-the 24th June. Gilmore v. Shuter, (1 Vent. 330.) Couch v. Jeffries, (4 Burr. 2560 2 Show. 16. 2 Mod. 310.) It is a fundamental principle, that laws should operate prospectively.[3] 1 Black. Com. 46. Co. Lift, 360, a. 2 Inst. 310. 6 Bae. Abr. 310. And for this plain reason, because laws should not be construed, (unless their *306 letter imperiously require it,) to do injustice, or to endamage the innocent. Nova constitutio futuris forman debei imponere non prceteritis. To which I will add, in the words of the Constitution, nor so as “ to impair the obligation of contracts.” Indeed, under the constitutional recognition of such a plain rule of common justice, rather than risk an infraction of it, in a case, where the contract might have been executed the hour before the ratification of the law, and certainly was, without a knowledge of it, I could feel no difficulty in allowing to the parties the ■advantage of the fraction of a day, if essential to the support of the contract. And after a verdict, supporting the contract, with no objections ■expressly made before the jury, as to the precise time when the policy was executed, I could never resort to the apex juris to defeat the verdict, •but rather conclude in support of it, that the contract was executed a fraction of time before the ratification of the law, or possibly upon the day before the ^written date : for the written date is but prima facie proof of the true date, and may be contradicted by extrinsic testimony. See 2 Inst. 6T4. Returning to the Embargo Act itself, though rather to its spirit than its letter, it may be observed, that it is very penal in its forfeitures ; and that the President is directed to issue instructions to carry it into effect. Both of which would incline the mind of a judge to conclude, that its true import is prospective ; aud its spirit and purview authorize us to except out of the operation of the first hard but unavoidable, rule laid down, (that the notice of a law is instantly ■co-extensive with the people it is to govern,) as many contracts as innocently occurred on the day of the ratification ; by construing “from and after the passing,” synonymous with from and after the day of the passing. But it is conceived, and upon this point the Court is unanimous, that, after a verdict which supposes the contract made, at least, a moment of time before the law was ratified, supported, too, as it is by the fundamental rules that Acts should not be construed to impair existing contracts, and that no citizen is presumed to have infracted the law, we may, without straining the letter of the Act in question, uphold the conclusion, that the policy was executed, before the Act prohibited such contracts.
Having got rid of the question which incidentally perplexed it, I will proceed to consider the main object of both parties. Independent of the Embargo Act, the risk had clearly commenced. The words are, “ at and from Charleston;” and the goods were laden and shipped on the 4th April, the date of the policy. Under these words the insurers are liable from the time of subscribing the policy ; the thing insured being then at hazard. See 1 Mars. 261, and the cases there referred to. Had the goods been shipped but the day after, perhaps the Act may have estoppd the inception of the risk; and thus defeated the policy, though originally valid. But the risk actually commenced, as well as the policy, just within the legitimate time ; and this brings us, at length, unfettered, to ^he inquiry, *whether a domestic embargo, of expressly limited duration, is a peril insured against, under the words, “arrest, restraint, and detainment, of all kings, princes, or people, of what nation, condition, or quality, soever ?” The words are so comprehensive, that we cannot but conclude, that they embrace domestic as well as foreign embargoes, in their literal import. That the words, “ insure *307 against foreign embargoes,” is not questioned. See 2 Mars. 506. Green v. Young, (2 Ray. 840.) Robertson v. Ewer, (1 Term Rep. 132.) Rotch v. Edie, (6 Term Rep. 422.) Touteng v. Hubbard, (3 Bos. & Pul. 302. 5 Esp. Rep. 184.)
All these adjudications relate to foreign embargoes ; but though they draw no distinction between those and domestic embargoes, yet they do not, in terms, decide the precise case before us. And we must, for that purpose, turn to American decisions altogether, and resort to established principles. The leading American decisions are, those of Odlin v. The Insurance Company of Pennsylvania, (2 Law Jour. 205,) and M’Bride v. The Marine Insurance Company, (5 John. 299.) In the former, Judge Washington, after a review of the English decisions, noting, as he proceeds, the dicta of the English Judges, and a full examination of the opinions of the English lawyers and foreign jurists, generally comes explicitly to the conclusion, that a domestic embargo, subsequent to fthe policy, is a risk insured against. He observes, with apparent reason, that the absence of positive English decisions has arisen from the general understanding, that, such an embargo is within the words of the policy. In this opinion the Judge has ably considered the policy and convenience of the doctrine in support of his conclusion ; and makes the whole conspire with well known principles and opinions from abroad, so rationally and cogently to the same end, that the reader inevitably infers, “ita lex scripta est.” This was a decision of a Circuit Court of the United States, but certainly entitled to great consideration, not only from its intrinsic reason, backed and supported by authorities *so various, but from the Court whence it came For though we are all bound to support the laws of the United States, yet their own Courts are still more nearly bound to watch against infractions of their laws, and to constrain obedience to the statutes of the United States. The case of M'Bride v. The Marine Insurance Company, was decided by the Supreme Court of New York. Chief Justice Kent, in the decision, adopts the argument and learning of Judge Washington, without qualification. This adjudication has become the law of New York, say the Court, in the case of Ogden v. The Fire Insurance Company, (10 John. 179.) And thus, to conspiring opinions from abroad, we may add the fixed law of New York, and the probable law of the Courts of the United States.
Comity, and the spirit of uniformity, it appears to me, would urge us to add our assenting voice ; provided there be no distortion of reason or breach of principle in the accession. Leaving, then, the strong alliance of authority, we come to consider these. Here again, the comprehensive argument of Judge Washington leaves but little more to be done, than to trace his well defined course. The fallacy of the argument, on the part of the defendant, is manifest. Their principle is, that if a law renders a contract unlawful in the performance, the contract becomes void. This is clear. Mar. 198. 1 L. Ray. 321. 1 Mod. 189. Pow. 444. 2 Com. 532. Bnt a limited embargo only suspends the performance, and does not prohibit it. This is also clear. Mar. —. 3 B. & P. 29L, 2 Hall L. J. 229. 5 John. 299. It rather acknowledges the legality, by suspending the privilege of executing the contract for a given time. *308 In such cases, the doctrine is established, that the parties are still to per. forni whatever is not forbidden. The law makes as little infraction as possible, and it follows, that the contract is to be performed at the end of the suspension, because no longer forbidden. . In a word, the contract remains unaltered, and the suspension is the very peril insured against.
It follows, that the insurer becomes ^liable. • To me'it appears that the opposing argument would go so far as to release the insurer, by the occurrence of the very event, from which he had undertaken to shield the insured. ; What irreconcilable injustice I
Again, it is supposed that a warranty against 'the passing of an embargo law may occasion infractions of it. But does the insurance invite to a violation of law ? Quite the contrary ; for it reconciles the insured to the detention, by rendering him safe in that event; • and thereby removes the temptation to escape from the %rrest. But by rendering the policy void, you make it his interest to escape. Both Kent and Washington agree with the British Judge, in the case of Touteng v. Hubbard, (3 B. & P. 302,) that State policy does not forbid one citizen'insuring another against an embargo by their own government; and with evident reason ; for the assurance is, that the law will not be passed, or rather, against a certain evil, in case of such enactment; not that its provisions shall not be enforced after passing, nor that the insured shall be indemnified for breaking the law. The converse is the tendency of the warranty in either case. For the insured is tied down by the contract to obey, as well as interested to do so.
A distinction was attempted to be made, between a common embargo, and one succeeded by a declaration of war, as happened in 1812, coupling the two measures together as in pari materia. But this Court cannot perceive that they are the'same. The right of the insured to abandon was complete under the Embargo Act; and they did abandon before the declaration of war. The abandonment made the claim on the insurers perfect; it became a vested right thereby, and no after Act could divest the debt, now no longer contingent or conditional. To test this, suppose a suit had been brought, and judgment had, before the war, could that measure have destroyed the plaintiff’s claim ? By no means. If there is any distinction between the Embargo Act of 1801, under -which the *two decisions, so much relied upon, occurred, and that of 1812, it is plainly against the insurers in this case. The former embargo was unlimited as to time, and could therefore be scarcely called a temporary suspension, unless, ex vi termini, embargoes • are limited restraints, which I deem the established meaning of the term embargo. There was therefore a show of reason, at least, in saying that the embargo of 1801, prohibited, not barely suspended, the performance of the contracts. Not so of the embargo of 1812, which was limited to ninety days expresssly. The Court, therefore, from the plain import of the-words of the contract, the common end and views of parties to insurances, from the principles of the law and policy, as well as from respect for adjudications elsewhere,[1] which though not imperatively binding, yet hold out the authority of reason, and remind us of the convenience of *309 uniformity, are decidedly of opinion, that the insured were authorized to abandon.
Ford, for the motion. K. L. Simons, contra.
The motion is therefore dismissed.
Colcock, Nott, and Johnson, JJ., concurred.
Gantt, J., dissented.

 1 Bail. 616.

 Frauds, 2 Stat. 525.

 3 McC. 91.

 Ante, 155; 2 N. & MoC. 504.